IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MELISSA M. REINHARDT,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-1030 LRR

REPORT AND RECOMMENDATION

_____

The claimant, Melissa M. Reinhardt (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    BACKGROUND

Claimant was born on September 1, 1989, and was 25 years old at the time of the ALJ's decision. (AR 35).[1] Claimant completed high school and is able to communicate in English. *Id*.

---

[1] "AR" refers to the administrative record below.

Claimant applied for benefits on December 3, 2014, alleging disability since January 1, 2008,[2] due to several mental conditions. (AR 151, 174). After a hearing on March 28, 2016, the ALJ ruled against claimant on April 13, 2016. (AR 26-35, 41). Claimant filed a request for review, which the Appeals Council denied on June 3, 2016. (AR 1). Thus, the ALJ's decision is the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On July 29, 2016, claimant filed a complaint in this Court. (Doc. 4). The parties have briefed the issues, and on February 13, 2017, this case was deemed fully submitted. (Doc. 19). On the same day, the Honorable Linda R. Reade referred this case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If a claimant is able to perform work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring

---

[2] With Title XVI, claimant may not receive benefits for any time prior to when she filed her application. 20 C.F.R. § 416.335.

practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If a claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if a claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to perform basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if a claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if a claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of the claimant's past relevant work. If the claimant can still perform past relevant work, then the claimant is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the

Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

At Step One, the ALJ found claimant had not engaged in substantial gainful activity since November 3, 2014, the application date.

At Step Two, the ALJ found claimant had the following severe impairments: bipolar disorder, ADHD, borderline personality disorder, anxiety disorder, and major depressive disorder recurrent and moderate.

At Step Three, the ALJ found claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

At Step Four, the ALJ found claimant had the residual functional capacity "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she would be limited to simple, routine and repetitive tasks, involving simple work related decisions. She could have occasional contact with supervisors and co-

workers, but she could have no contact with the general public." The ALJ found that with this RFC, claimant was unable to perform any past relevant work.

At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy claimant could perform, and therefore was not disabled.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining

whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for two reasons:

1. The ALJ erred in failing to properly assess the medical opinions. (Doc. 15, at 2-8).

2. The ALJ erred in failing to properly assess her subjective complaints. (Doc. 15, at 8-14).

I will address these arguments separately below.

### A. ALJ's Weighing of Medical Opinions

Claimant argues the ALJ erred by not properly weighing the medical opinions. The ALJ decided to give some, but not controlling, weight to a July 2015 assessment by Brian Proctor, M.D. The ALJ did not fully credit it because Dr. Proctor had seen claimant only three times, and because the medical tests and observations, which the ALJ cited, were inconsistent with Dr. Proctor's proposed limitations. (AR 32).

Dr. Proctor had seen claimant three times, including the time he completed the questionnaire. (AR 474). He treated claimant with medication. (AR 474). Dr. Proctor described his clinical findings as: "Depressed mood, anxiety, unable to tolerate stresses of work environment without severe panic attacks." (AR 474). This is not consistent with his own or others' observations or testing. In sixteen unskilled work aptitudes, Dr. Proctor rated claimant as seriously limited in five areas, and having no work-related ability at all in eleven areas. (AR 476). Although the form asked Dr. Proctor to explain his ratings and to "include the medical/clinical findings that support this assessment," Dr. Proctor left this space blank. (AR 276-77). Dr. Proctor checked that claimant's impairments or treatment would cause her to be absent more than four days a month. (AR 478).

The ALJ weighed the number of times Dr. Proctor saw claimant when considering his evaluation. The ALJ should take into account the length of treatment and the number of visits. 20 C.F.R. § 416.927(c)(2).

A treating physician is different from other medical sources and his opinion could receive controlling weight, weight the regulations do not accord to any other medical opinion. Thus, an ALJ evaluates a treating physician's opinion using additional analysis. A treating physician's opinion is due controlling weight if it is well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

8

evidence. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Claimant's two treatment visits and one evaluation visit with Dr. Proctor weakened the persuasiveness of Dr. Proctor's evaluation. The Eighth Circuit Court of Appeals upheld a finding that a doctor was not a treating physician because, inter alia, he saw the patient only three times. *Randolph v. Barnhart,* 386 F.3d 835, 840 (8th Cir. 2004).

Dr. Proctor's two treatment notes had observations inconsistent with his own conclusions but consistent with evaluations from James Meyer, Psy.D., and Carroll Roland, Ph.D., and treatment records from Colleen Teynor, LMSW, all of which supported the ALJ's residual functional capacity finding. (AR 32). In March 2015, Dr. Proctor saw claimant on a referral from Dr. Meyer for an assessment of her attention deficit disorder. (AR 472). Dr. Proctor described claimant in both March and April 2015 as anxious and depressed, but having intact judgment; good insight; normal speech and ability to abstract; and coherent, logical, and goal directed thoughts. (AR 470, 473). Dr. Proctor's mental status examinations are clinical findings. 20 C.F.R. § 416.913(b)(2). Neither of Dr. Proctor's mental status examinations described or suggested the severe limitations Dr. Proctor offered in his opinion. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (opinion in conflict with treatment records). Although the ALJ did not cite to Dr. Proctor's treatment records, he did consider the entire record and Dr. Proctor's treatment notes cannot be seen as consistent with Dr. Proctor's opinion.

The ALJ cited to *fourteen* records showing claimant had better functioning than Dr. Proctor suggested. (AR 31-32, citing Exhibit 7F at 5, 20; AR 406-21). Two of these records showed medication alleviated claimant's symptoms. In July 2014, claimant told Robert Key, M.D., that Sertraline helped with her anxiety. (AR 406). In September 2014, claimant told Dr. Key that Zoloft and Buspar helped with racing thoughts and attention problems. (AR 421). It is relevant that medication reduced claimant's symptoms. *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014).

9

The ALJ also reviewed Ms. Teynor's therapy records, which showed that on twelve occasions, claimant's response to treatment was good and her level of distress was mild. (AR 31, citing Exhibit 16-F; AR 497-98, 500-13). Given this evidence, the ALJ observed an inconsistency between the clinical records and Dr. Proctor's opinion. (AR 32). *See Milam,* 794 F.3d at 983. The ALJ also discussed other objective evidence showing better functioning than claimant alleges in her arguments to the Court. (AR 31). *See Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010) (ALJ's narrative explanation elsewhere in decision may illuminate other findings); *Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) (similar). In determining claimant's residual functional capacity, the ALJ cited the clinical findings in a January 2015 evaluation by Dr. Meyer, a report claimant ignores in her arguments to the Court. (AR 31, citing Exhibit 6F; AR 399). As previously noted, Dr. Meyer referred claimant to Dr. Proctor (AR 399-401), and other psychologists, upon whom the ALJ explicitly relied. (AR 31-32, 73, 270).

In contrast to Dr. Proctor's opinion, Dr. Meyer observed that claimant was alert, oriented, cooperative, and responsive, and that claimant had normal thoughts and intact cognitive function. (AR 400). Although claimant alleged impaired concentration, Dr. Meyer found "she is able to generally represent herself in this setting. . . ." (AR 400). Dr. Meyer also found claimant's memory appeared intact, her intelligence average, and that she displayed fair to good insight and judgment. Dr. Meyer saw no evidence of thought disturbance, though she was distractible and had attention deficit hyperactivity disorder. (AR 400).

In summary, Dr. Meyer's evaluation was generally consistent with claimant's treatment notes and other evaluations, save the clinically unsupported ones of Dr. Proctor and Ms. Teynor. *See Vonbusch v. Apfel*, 132 F. Supp.2d 785, 798 (D. Neb. 2001) (citing the lack of objective clinical findings, diagnostic testing, and psychological evaluation). In addition to Dr. Meyer's and Dr. Proctor's reports, the ALJ analyzed claimant's

allegations, testimony, third party statements, medical evaluations, and treatment notes in arriving at the residual functional capacity finding. (AR 30-35).

When evaluating the evidence, the ALJ also gave great weight to a consultative examination by Dr. Roland, a psychologist, who specifically referenced Dr. Meyer's report. (AR 31, 270). Dr. Roland concluded claimant's test results were consistent with severe depression and that she needed medications. (AR 274-75). In addition to reviewing Dr. Meyer's opinion, Dr. Roland interviewed claimant and reviewed her function report and some medical history. (AR 270). Claimant lived with her two children, drove, and performed her own shopping, cooking, laundry, and house cleaning. (AR 273). Dr. Roland described claimant as cooperative, fully oriented, and appropriately dressed. (AR 273). Dr. Roland found claimant's attention was appropriate, concentration was fair, memory was intact, and thoughts were goal directed. (AR 273-74). Claimant demonstrated abstract thinking ability and performed well on one calculation test and had difficulty with another one. (AR 274).

Consistent with the ALJ's residual functional capacity finding, claimant's testing performance with Dr. Roland suggested the ability to remember two and perhaps three step instructions. (AR 274). Dr. Roland said claimant understood basic societal norms and had sufficient memory and intellectual functioning for employment. (AR 275). Dr. Roland's opinion was more detailed than Dr. Proctor's and supported the ALJ's residual functional capacity finding that claimant could perform simple tasks with no public contact. (AR 30). *See Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (similar facts).

The ALJ gave supported reasons for giving partial weight to an opinion by Ms. Teynor, LCSW. (AR 32, 479-81). The ALJ weighed the fact that Ms. Teynor did not

qualify as a medical source[3], that her opinion was inconsistent with her treatment notes, and that it was inconsistent with the record. (AR 32). These are recognized reasons for discounting a therapist's opinion.

In her July 2015 opinion, Ms. Teynor filled out the same form completed by Dr. Proctor. (AR 479). She stated she had seen claimant for ten sessions over nine months for cognitive behavioral therapy and that claimant responded when she worked consistently on her issues.[4] (AR 479). According to Ms. Teynor, claimant had problems with stress, attention to detail, and emotional reactivity, and becoming aggressive when upset or overwhelmed. (AR 479). Ms. Teynor endorsed a number of symptoms and rated claimant as having no useful ability in eleven work related areas. (AR 481). Ms. Teynor cited as her medical/clinical findings that claimant got upset easily about criticism and workplace changes and could not maintain consistent attendance (AR 481), though these seemed more likely to be claimant's account than Ms. Teynor's observations. Ms. Teynor wrote that claimant would become sporadically angry and uncontrolled when overwhelmed and she would be absent from work more than four days a month. (AR 482-83).

The ALJ's decision to give less weight to Ms. Teynor's opinion was specific and well supported. The ALJ found Ms. Teynor's opinion inconsistent with her treatment notes showing that on twelve different occasions, claimant's response to treatment was good and her overall distress level was mild. (AR 32). *See Milam*, 794 F.3d at 983

---

[3] A physician or a psychologist, not a therapist, is an "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(a)(1-6). Only an acceptable medical source can establish a medically determinable impairment. *Id.*

[4] Ms. Teynor's file showed claimant did not consistently work on her issues. Ms. Teynor observed in October and December 2015 that claimant had not been using strategies for calming herself and reducing anxiety and pain. (AR 498, 500-03).

(opinion due less weight because it conflicted with treatment notes). The ALJ cited to almost every therapy session Ms. Teynor conducted with claimant, noting their conflict with Ms. Teynor's opinion. (AR 32). The ALJ's finding that claimant's admitted activities undermined Ms. Teynor's opinion to the extent that it merited partial, but not full, weight. (AR 32). *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014). Although she had help, by her own and her mother's account, claimant was the sole caretaker of three young children,[5] and performed cooking, driving, shopping, paying bills, cleaning, and doing laundry. (AR 32, 185-87, 193-95). These activities suggest greater functioning than Ms. Teynor alleged. The ALJ gave supported reasons for not fully crediting Ms. Teynor's opinion. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority.").

The evidence supported the ALJ's finding that the reviewing psychologists' opinions should receive great weight. The ALJ acknowledged that as a general matter, reviewing physicians' opinions do not merit as much weight as examining and treating physicians' opinions. But in claimant's specific case, the reviewing opinions were more relevant and more closely tied to the record. (AR 66-70).

The first reviewing psychologist, Aidzuz Tirado, Psy.D., gave detailed, supported explanations for her conclusions that were consistent with other probative evidence. (AR 32, 66-70, 80-87). In March 2015, Dr. Tirado reviewed records from Memorial Hospital, Great River Community Medical Clinic, Crossing Rivers Health Clinic, Mayo Clinic Behavioral Health, and claimant's application documents. (AR 65-67). Dr. Tirado stated claimant's allegations about her functional limitations were not substantiated by the objective medical evidence alone. (AR 70). When rating claimant's ability for sustained

---

[5] Connie Reinhardt, claimant's mother, stated that sometimes claimant took care of her, Ms. Reinhardt. (AR185).

work activities, Dr. Tirado concluded claimant had no significant limitations in remembering work-like procedures and short and simple instructions; carrying out short and simple instructions and activities within a schedule; maintaining regular attendance; sustaining an ordinary routine; and working in coordination with others. (AR 71-72). Claimant had moderate limitations related to detailed instructions, interacting with others, and completing a normal work week. (AR 71-72).

Dr. Tirado noted that the SSA employee who took claimant's application did not observe any issues. (AR 73, *see* AR 171). Dr. Tirado also credited Dr. Roland's consultative report because it was consistent with claimant's treatment records, Dr. Meyer's January 2015 opinion, and claimant's activities. (AR 73, 193-95, 400). These reports conflicted with claimant's subjective complaints, which Dr. Tirado thought were only partially credible. (AR 73). Dr. Tirado concluded claimant could understand and complete one to two step commands in a sustained manner. Claimant would do best in a low stress environment with minimal social demands and the ability to perform a wide range of simple and routine work activities. (AR 74, 76). These observations were consistent with the ALJ's residual functional capacity finding.

In June 2015, the second State psychologist, Lon Olsen, Ph.D., reviewed claimant's function report, and records from Franciscan Skemp Health Care, Behavioral Health Services, Memorial Hospital, Great River Community Medical Clinic, Crossing Rivers Health Clinic, Mayo Clinic Behavioral Health, and Dr. Roland. (AR 80-82). Like Dr. Tirado, Dr. Olsen thought claimant's symptoms could not be explained only by objective evidence and that she was only partially credible. (AR 84). His other assessments also mirrored those of Dr. Tirado. (AR 84-87). Dr. Olsen also believed that if claimant had no public contact and low social demands, she was capable of simple, repetitive tasks. (AR 87).

The ALJ gave great weight to Dr. Tirado's and Dr. Olsen's opinions because "there exist a number of other reasons to reach similar conclusions (as explained

14

throughout this decision)." (AR 32). The ALJ's cited reasons throughout his decision were Dr. Meyer's evaluation (AR 31, 400), claimant's positive response to medication (AR 31, 406, 421), Ms. Teynor's therapy records (AR 31, 406-21), Dr. Roland's consultative evaluation (AR 31, 270-75), and claimant's activities (AR 32, 185-87, 193-95, 273). Because the ALJ gave supported reasons for the weight he assigned to Dr. Tirado's and Dr. Olsen's opinions, the Court should defer to his evaluation. *See Grable*, 770 F.3d at 1201-02.

The ALJ noted that a non-examining psychologist's opinion is "generally" not entitled to as much weight as a treating doctor's, but claimant's case was different. (AR 32). In appropriate circumstances, opinions from State agency psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p 1996 WL 374180, at *3. The amount of evidence the State psychologist reviews is relevant. *See id*. Further, it is relevant if the reviewed evidence contains a specialist's medical report providing more detailed and comprehensive information than was available to the treating source. *Id*. Dr. Tirado and Dr. Olsen had access to almost all of claimant's records, including Dr. Roland's and Dr. Meyer's evaluations, which were much more detailed than Dr. Proctor's. "Certainly, there are circumstances in which relying on a non-treating physician's opinion is proper," and the ALJ made a supported decision that claimant's case was one of them. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The Eighth Circuit Court of Appeals has held that an ALJ may rely upon state agency opinions after properly rejecting the treating source evidence. *See Smith v. Colvin*, 756 F.3d 612, 626-27 (8th Cir. 2014). Considering everything, the ALJ properly weighed the medical opinions.

### B. *The ALJ's Credibility Determination*

Claimant next argues the ALJ erred in failing to give significant weight to claimant's subjective complaints. When determining residual functional capacity, the ALJ must evaluate a claimant's credibility regarding her subjective complaints. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, the ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each *Polaski* factor as long as the ALJ recognizes and considers the *Polaski* analytical framework, as he did here. (AR 14-15). *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered"). Credibility of a claimant's subjective testimony is primarily for the ALJ, not the reviewing court, to decide. *Pearsall,* 274 F.3d at 1218.

The evidence showed claimant's subjective allegations were not entirely credible. The ALJ articulated his reasoning on this point and provided citations to the record. (AR 33-34). In analyzing a claimant's subjective complaints, an ALJ considers objective facts such as the claimant's daily activities; the duration and intensity of the condition, precipitating factors, and functional restrictions. *Polaski* at 1322. Other factors include the claimant's work history and objective medical evidence. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

The ALJ considered such factors when evaluating claimant's believability and he agreed that claimant had some limitations. (AR 33). He found claimant's daily activities were not as limited as one would expect given her complaints. (AR 33). *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (subjective complaints inconsistent with daily activities). Claimant was a full-time caretaker to her three children, and, according to

claimant and her mother, she could prepare meals, and perform cleaning, laundry, dish washing, driving, going out alone, managing her money, and shopping in stores. (AR 33, 195). *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (ability to take care of others); *Johnston v. Colvin*, No. 13–CV–2710 (VEC)(FM), 2015 WL 1266895, at *2 (S.D. N.Y. Mar. 18, 2015) (the claimant performed volunteer work and was the primary caretaker for three young children). Moreover, the record shows that claimant attended community college and, after taking medication, her grades were good enough to make the Dean's list. (AR 399, 519). *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (ability to attend school was relevant). Therefore, I find the ALJ did not err in the weighing of medical opinions, or in evaluating the credibility of claimant's subjective complaints.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 20th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa